**In re PERFECTLITE CO., Debtor.**

**Bankruptcy No. B90–01232.**

United States Bankruptcy Court, N.D. Ohio.

June 18, 1990.

Alexander Jurczenko, Cleveland, Ohio, for debtor-tenant.

Charles W. Fonda, Cleveland, Ohio, for landlord.

## MEMORANDUM

DAVID F. SNOW, Bankruptcy Judge.

This memorandum is written to clarify the Court's ruling in denying the Debtor's motion for extension of time to assume or reject the Lease Agreement dated July 23, 1987 between Joseph Shapiro as Landlord and Perfectlite Co. and Howrah Industries, Inc. as Tenant (the "Lease"). The Landlord filed an objection to the motion including a brief and a statement styled "Declaration of Joseph Shapiro." A copy of the Lease was attached to that Declaration. The matter came on for hearing on June 14, 1990 and the Court, based upon the statements of counsel, denied Debtor's motion on the ground that Debtor had failed to establish cause for extending the 60–day period in which the Debtor may assume or reject a nonresidential lease of real property under section 365(d)(4) of the Bankruptcy Code. Later on June 14 the Debtor filed its motion for reconsideration of that ruling. Since the motion for reconsideration misconstrues the basis of the Court's decision, it appears appropriate to clarify matters in this memorandum.

■ Debtor filed its chapter 11 petition on March 20, 1990. Debtor's motion for extension of time to assume or reject executory contracts was filed 55 days later on May 14, 1990. The matter was not heard by the Court, however, until June 14, 1990, some 86 days after the March 20 order for relief. Section 365(d)(4) of the Bankruptcy Code provides in relevant part:

> ... [I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the Debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

There has been a split among the courts as to the sort of action required within the 60–day period after the order for relief in order to preclude the automatic rejection of the lease under subsection (d)(4). Several courts have held that the literal language of that section requires an actual court order within the 60–day period. *See In re House of Deals of Broward, Inc.,* 67 B.R. 23 (Bankr.E.D.N.Y.1986); *In re Coastal Industries, Inc.,* 58 B.R. 48 (Bankr.D.N.J. 1986); *In re Taynton Freight System, Inc.,* 55 B.R. 668 (Bankr.M.D.Pa.1985). Other courts, most notably the Ninth Circuit in *Southwest Aircraft Services, Inc. v. City of Long Beach (In re Southwest Aircraft Services, Inc.),* 831 F.2d 848 (9th Cir. 1987) *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988), have rejected this literal interpretation of subsection (d)(4) on the ground that Congress could not have intended that the debtor would forfeit substantial rights merely because the bankruptcy court's docket was too congested to allow the matter to be heard in the prescribed 60–day period. The court in the *Southwest* case noted that, "... a rule that forfeits a party's rights, benefits, privileges or opportunities simply because a court fails to act within a particular time period would be quite extraordinary." 831 F.2d at 851. This conclusion seems so sound and sensible—albeit somewhat difficult to reconcile with the language of section 365(d)(4)—that this Court intends to follow the Ninth Circuit view unless and until contrary authority emerges in this circuit binding on this Court. Therefore, Debtor's motion filed some five days before expiration of the 60–day period in section 365(d)(4) was timely.

The Court's denial of Debtor's motion was not, and is not, based on the timeliness of Debtor's filing nor the time of the hearing held in response to that filing. The Court's denial was based on the fact that the Debtor not only failed to establish cause for extending the 60–day period, but evinced a total disregard of its obligations to the Landlord under section 365(d).

■ "It is now well-established that the primary purpose of secton 365(d)(4) is 'to protect lessors ... from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases.'" *In re American Healthcare Management, Inc.,* 900 F.2d 827 (5th Cir.1990) (quoting *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1079 (9th Cir.1989). Only when the debtor establishes cause should the court extend the time provided in section 365(d)(4). A number of factors should be taken into account in determining whether or not cause exists for extending the 60–day period in subsection (d)(4): (a) Is the Lease a primary asset central to the reorganization? (b) Does the Debtor need additional time to act intelligently in making the judgment to assume or reject? (c) Is the lease in question one of a number of business properties whose acceptance or rejection requires additional time for study and determination? (d) Has the Debtor complied with its post petition obligations under the Lease pursuant to section 365(d)(3)? (e) How will the Debtor's continued possession of the premises affect the Lessor? Some of these factors are discussed in *In re Wedtech Corporation,* 72 B.R. 464 (Bankr.S.D.N.Y.1987).

■ Debtor alluded to none of these factors in its motion. But at the hearing and in its motion for reconsideration Debtor asserted that the premises covered by the Lease are its only operating property and may be critical to its reorganization effort. Although from counsel's statements the extent to which the property is currently being employed and the status of its occupation, including occupation by a sub-tenant, is a bit unclear, the Court accepts Debtor's contention that the Lease may in fact be central to its operations and its reorganization effort. Debtor asserted at the hearing that its business plans are in transition and might be undergoing a change from manufacturing to assembling of light products and that the Debtor wants more time to sort this out. Although this is plausible, the Debtor offered no reason to suggest that this determination could or would be made in the month and a half of additional time it requested or when this determination could in fact be

made. The force of its argument is weakened further by the fact that Debtor has in effect already had six months to consider whether to assume or reject this Lease.

Howrah Industries, Inc., the other named Tenant to the Lease, filed its petition for reorganization in chapter 11 with this Court on December 14, 1989 as case number B89–05121. That petition, which was filed by the same counsel representing the Debtor in this case, was styled "Howrah Industries, Inc., dba Perfectlite Co." and proceeded for some months on the premise that the corporate entity was Howrah Industries and that Perfectlite was a trade name. Subsequently, it appeared, however, that Perfectlite was in fact an Ohio corporation and although its charter had been revoked in 1986, that it was, in form at least, the operating corporation and that Howrah Industries was only its holding company.

The Howrah case was dismissed at the instance of the United States Trustee by order entered on March 15, 1990, just five days before this case was filed. The Landlord filed a notice of appearance in the Howrah case; the debtor in that case filed a motion for extension of time to assume or reject executory contracts for a period of 60 days, presumably relating to the Lease, which was attached as an exhibit to the schedules belatedly filed in that case. It appears, therefore, that as a practical matter the Debtor has had a considerable time to ponder the same business questions which it now puts forward as a ground for extending the 60–day period.

There are certainly no indications in this case that the Debtor needs additional time to sort through various leases to determine which should be kept and which should be rejected. According to Debtor's admission at the hearing, the Lease is its sole lease subject to the 60–day constraint of section 365(d)(4). Therefore, the caption of Debtor's motion relating to "executory contracts" and its statement in paragraph 7 of its motion to the effect that "Debtor and Debtor–In–Possession has not determined which executory contracts may be subject to Section 365 time requirements" is at best disingenuous.

But notwithstanding the fact that this is Debtor's sole lease subject to section 365(d)(4), there may well be situations where cause will be found to extend the 60–day period in subsection (d)(4) in order to facilitate reorganization. Such cases will usually involve consideration of the landlord's rights and section 365(d)(3) as well as (d)(4). Subsection (d)(3) provides in relevant part that

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2) ..., arising from and after the order for relief under any unexpired lease of nonresidential real property until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title....

Debtor did not dispute the Landlord's statement that Debtor has made no payments under the Lease since the filing of the petition and in fact since July 1, 1989. Moreover, Debtor did not dispute Landlord's statement that at least until recently a sub-tenant has been making substantive rental payments to Debtor in respect of the leased property. Debtor offered no explanation for its default under section 365(d)(3) nor any promise to cure that default. Counsel argued only that any default under that section was legally irrelevant to the extension of the 60–day period under section 365(d)(4).

Debtor's argument is not only inequitable on its face, it is clearly inconsistent with section 365(d) and with the views expressed by the Ninth Circuit in *Southwest Aircraft Services, Inc, supra*. At the hearing before the bankruptcy court in that case the debtor had tendered to the landlord checks for all outstanding rent, which the landlord refused. The landlord argued to the Ninth Circuit that the debtor's failure to pay rent required by section 365(d)(3) should, without more, result in denying the debtor's right to extend the 60–day period under section 365(d)(4). Since the Bankruptcy Code does not condition a section 365(d)(4) extension of the 60–day period on compliance with section

365(d)(3), the court in the *Southwest* case quite properly rejected that argument. What it said in this regard was both more practical and more flexible:

> Accordingly, we hold that the failure to make payments under subsection (d)(3) constitutes simply one element to be considered, along with all the other relevant factors, in determining whether cause exists under subsection (d)(4) to extend the 60–day period for assumption or rejection. *See In re Beker Indus. Corp.*, 64 B.R. 890, 898 (Bankr. S.D.N.Y.1986). Thus on remand the bankruptcy court shall take Southwest's failure to make rental payments into account when it hears its motion for extension of time. However, at that time, the court should also consider the fact that Southwest tendered its past due rent at the bankruptcy court hearing on the extension motion.

831 F.2d at 854.

■ The only factor urged by Debtor in its original motion was that the requested extension would coincide with its 120–day exclusivity period under section 1121(b) of the Bankruptcy Code. But there is nothing in the Code or its legislative history to warrant extending the 60–day period in section 365(d)(4) to coincide with Debtor's exclusivity period. Subsections (3) and (4) of section 365(d) were adopted in 1984 at the urging of shopping center interests to provide landlords enhanced protection against delays in the reorganization process. The 120–day exclusivity period has been in the Code since it became effective in 1979. There is no indication that Congress thought the 120–day exclusivity period had any bearing on the 60–day period in subsection (d)(4). In light of this, there is no plausible argument for finding "cause" for extending the 60–day period in order for the Debtor to have 120 days to make up its mind on what to do with a lease.

■ At the hearing, and again in its motion for reconsideration, the Debtor argued that the Landlord is in a bankruptcy proceeding in California in which the Lease may have been rejected, and that this uncertainty warranted extension of Debtor's right to assume or reject the Lease. Counsel offered no evidence that the Landlord has assumed or rejected the Lease; Landlord's Ohio counsel said that he was aware of no such proceeding. It is unclear how this would affect the Debtor's right to extension of the 60–day period in this proceeding. Debtor's request for more time to explore whether or not the Lease has been rejected by the Landlord, when it offered no evidence that it had, and when the Landlord made no such assertion, looks like an afterthought designed only to muddy the water and effect further delay. In its motion for reconsideration Debtor notes that the section 341 creditors meeting was not held until May 10th, and that creditors committee counsel was not appointed until May 21st. The June 14 hearing was held more than a month after the 341 hearing and three weeks after creditors counsel was appointed. These dates suggest no sound basis to extend the section 365(d)(4) 60–day period.

In summary, it appears that Debtor has made no real effort to comply with the requirement of section 365(d)(3) or (4) but is intent only on occupying the leased premises as long as possible without paying rent. Debtor apparently thought it had a free ride for its 120–day exclusivity period notwithstanding section 365(d)(3) and (4); it does not. But even if Debtor's extension were to be granted, it has failed to indicate any basis to suggest that Debtor will in the next six weeks be in any better position to decide whether to assume or reject the Lease. This Court, as a court of equity, would be derelict if it permitted the Debtor to continue to exploit this Landlord in contravention of section 365(d)(3) on the basis of the Debtor's behavior in this case.

Based on the foregoing Debtor's motion for reconsideration is denied.